In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 07-3810

CHARIS CLERIDES and SOTEROULLA
HADJIKYRIYAKOU, Estate of NICOS
KARAKOSTAS,

*Plaintiffs-Appellants*,

*v.*

BOEING COMPANY,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 4378—**George W. Lindberg**, *Judge*.

———————

ARGUED MAY 15, 2008—DECIDED JULY 16, 2008

———————

Before RIPPLE, KANNE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Following a tragic airplane crash, Charis Clerides and Soteroulla Hadjikyriyakou, personal representatives of the estate of Nicos Karakostas, brought an action against Boeing in the United States

District Court for the Northern District of Illinois.[1] Boeing previously had moved to dismiss other actions arising out of this occurrence on the ground of forum non conveniens, contending that either Cyprus or Greece would provide a more convenient forum. The district court had granted the motion. The personal representatives of Nicos Karakostas stipulated to a forum non conveniens dismissal but reserved the right to appeal the district court's decision.[2] Because we believe that the district court did not abuse its discretion in granting the motion, we affirm the judgment of the district court.

# I

## BACKGROUND

The underlying facts are not disputed. On August 14, 2005, a 737-300 aircraft, designed and built by Boeing, was scheduled to fly from Larnaca, Cyprus to Athens, Greece as Helios Airways Flight 522. After takeoff, the aircraft failed properly to pressurize. As a result, the crew and passengers lost consciousness and asphyxiated; the plane crashed near Athens, Greece, when it ran out of fuel. Nicos Karakostas, a citizen and resident of Cyprus, was one of the passengers killed during the crash.

Helios Airways is incorporated and based in Cyprus and,

---

[1] The district court had diversity jurisdiction under 28 U.S.C. § 1332(a). The plaintiffs and plaintiffs' decedent are domiciliaries and citizens of Cyprus. The defendant is a Delaware company with its principle place of business in Illinois. The amount in controversy exceeds $75,000.

[2] We have jurisdiction under 28 U.S.C. § 1291.

at the time of the accident,[3] operated four aircraft on flights out of airports in Cyprus. The Cyprus Department of Civil Aviation has regulatory oversight responsibilities for Helios' operations. Helios maintains that the United States' courts lack subject matter and personal jurisdiction over it and has refused to produce voluntarily in the United States any evidence or witnesses in its possession, custody or control.

Boeing's Commercial Airplanes division is headquartered in the State of Washington. Boeing maintains in Washington custody and control of documents and witnesses relevant to the design, manufacture, certification, testing and customer support services of the 737-300 model aircraft. As a condition of the district court granting the forum non conveniens dismissal, Boeing agreed to make available in Cyprus and Greece all evidence and witnesses under its control.

After the crash, the Greek Air Accident Investigation & Aviation Safety Board ("Accident Safety Board") conducted the official accident investigation. Representatives from the Cyprus Air Accident & Events Investigation Committee and the United States National Transportation Safety Board ("NTSB") also participated. Boeing was a technical advisor to the NTSB, providing assistance as requested. The official investigation records, the individuals who conducted the investigation and autopsies and the recovered aircraft wreckage all are located in Greece. Although most of the investigative activities occurred in Greece, certain discrete activities occurred in France, Germany and the United States.

---

[3] Helios Airways changed its name to Ajet Aviation after the accident.

On October 10, 2006, the Accident Safety Board delivered
its Final Report; the report attributed the direct causes
of the accident to Helios flight crew errors. This report
was turned over to the Athens criminal prosecutor, who
initiated a Greek criminal investigation for homicide by
intent. The Accident Safety Board found that the flight
crew had failed to recognize that the aircraft's pressuriza-
tion system was set to the incorrect manual position.
Because the system was in manual, the aircraft did not
automatically pressurize. The Final Report also found
that the flight crew failed to recognize three warnings
that signaled that the aircraft was not pressurizing. The
Final Report concluded that human error on the part of
the flight and cabin crew contributed to the failure to
recognize the pressurization problems.

The Final Report identified several secondary causes
of the accident, including Helios' deficiencies in organiza-
tion, quality management and safety culture, and the
Cyprus Department of Civil Aviation's inadequate execu-
tion of its oversight responsibilities. The Accident Safety
Board also criticized Boeing's checklists, the 737's cabin
altitude warning horn and Boeing's inadequate remedial
response to prior pressurization incidents. After the
publication of the Final Report, Helios agreed not to con-
test liability in lawsuits filed against it in Greece or Cyprus
and to produce in Greece and Cyprus all witnesses,
documents and other relevant evidence.

Cyprus also undertook investigations into the accident.
Cyprus' Attorney General began a criminal investigation
immediately after the accident, and the Cypriot police
collected relevant documents and statements from
Cypriot witnesses. The Cyprus Air Accident Committee
also began an investigation. Both investigations were

ongoing when this appeal was filed. To facilitate the Cypriot criminal investigation, the Cyprus Council of Ministers appointed a Commission of Inquiry. The Commission was charged with investigating the events that led to the accident. It took testimony from many witnesses and collected relevant documents, all of which are located in Cyprus.

In August 2007, the personal representatives of the estate of Nicos Karakostas sued Boeing in the Northern District of Illinois. At the time they filed suit, a number of wrongful death actions arising out of the crash already had been filed against Boeing in the United States. The Multidistrict Litigation Panel had consolidated the suits in the Northern District of Illinois for pretrial proceedings. Boeing had moved to dismiss based on forum non conveniens, contending that either Cyprus or Greece would provide a more convenient forum, and in February 2007, the district court had granted the motion. The cases related to the crash therefore already having been dismissed, the personal representatives of Nicos Karakostas entered a stipulation consenting to the forum non conveniens dismissal but reserving the right to challenge that dismissal on appeal. The plaintiffs then timely appealed.

At the time this appeal was filed, legal proceedings related to the accident were pending both in Greece and the United States. In Greece, Helios sued Boeing in the Athens Multi-member Court of First Instance, alleging that several defects in the airplane had caused the accident. Helios sought consequential damages for lost future earnings and harm to its reputation. In addition, after the district court issued its forum non conveniens dismissal in this litigation, twenty-seven wrongful death

actions were filed in Greece against Boeing and, in some cases, Helios, including an action filed against Boeing and Helios to recover for the wrongful death of Nicos Karakostas.

## II

## DISCUSSION

"The common law doctrine of *forum non conveniens* allows a trial court to dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005) (internal quotation marks omitted). Federal courts have the discretion to dismiss a case on the ground of forum non conveniens when an adequate available forum exists and "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 127 S. Ct. 1184, 1190 (2007) (alterations omitted) (quotation omitted). "Dismissal for forum non conveniens reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Id.* (alteration omitted) (internal quotation marks omitted).

The leading case recognizing and delineating the common-law doctrine of forum non conveniens is *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 955 (7th Cir. 2007). *Gulf Oil* established that both private and pub-

lic interest factors ought to inform a court's forum non conveniens decision. 330 U.S. at 508-09. The private interest factors that a court may consider include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508. The enforceability of the judgment, if one is obtained, is also a private interest factor. *Id.* The public interest factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 508-09. A district court must be accorded great latitude in weighing the factors set forth in *Gulf Oil*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.*

As a general rule, a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant. *Id.* at 255; *Sinochem*, 127 S. Ct. at 1191. Where, as here, the plaintiff is a foreign citizen and resident, however, his choice of the United States as a forum should be accorded less deference than if the choice is made by a United States plaintiff. *Sinochem*, 127 S. Ct. at 1191. "When the plaintiff's

choice is not [his] home forum, . . . the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.' " *Id.* (quoting *Piper Aircraft*, 454 U.S. at 255-56).

We review for abuse of discretion the district court's forum non conveniens determination. *Bridgestone*, 420 F.3d at 704. The parties concede on appeal that Greece and Cyprus are adequate and available forums. Our task, then, is to determine whether the district court abused its discretion when it found that the private and public interest factors favored dismissal. *See id.*

### A.  Private Interest Factors

The Supreme Court and our cases have described the private interest factors to be considered by a court when faced with a forum non conveniens decision. *See Gulf Oil*, 330 U.S. at 508-09. The private interest factors that are relevant to this case include the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, and other practical problems that make trial of a case easy, expeditious and inexpensive. *See Bridgestone*, 420 F.3d at 704. The district court reasonably concluded that other possible factors were inapplicable or did not significantly weigh in favor of either party, and the parties do not dispute that conclusion. Taking the relevant private interest factors as a whole, it is clear that the district court did not abuse its discretion when it weighed those factors against the deference due to the plaintiffs' choice of forum and found that the factors favored dismissal. *See Sinochem*, 127 S. Ct. 1190, 1191; *Piper Aircraft*, 454 U.S. at 257.

The ease of access to proof in Greece and Cyprus favors dismissing the plaintiffs' claims. The Greek investigation into the crash faulted both the airline crew and Boeing; the record therefore supports both the plaintiffs' product liability claim against Boeing and Boeing's defense that Helios was responsible for the crash. The sources of proof relevant to the product liability claim include evidence and witnesses located in the United States, most of which is in Boeing's possession.[4] Boeing has agreed to make all evidence and witnesses in its possession available in Greece and Cyprus. The remainder of the relevant proof, however, is located primarily in Greece and Cyprus. This information includes the evidence and witnesses related to Helios and the flight crew, the primary investigations of the crash and the wreckage, the post-mortem examinations of the decedents, and evidence and witnesses related to the families' pain and suffering. The district court acted well within its discretion when it concluded that, given Boeing's agreement to produce its documents and witnesses in Cyprus and Greece and the location of the majority of other evidence in Cyprus and Greece, the relative ease of access to proof favored those forums over the United States.

The district court also reasonably concluded that the availability of compulsory process for obtaining unwilling

---

[4] The evidence located in the United States includes evidence related to the design and manufacture of the 737 aircraft and its component parts; Boeing's manuals, warnings, pre-flight checklists and subsequent revisions; Boeing's investigations of and responses to prior pressurization incidents; Boeing's and the Government's investigations of the crash; and components of the accident airplane's pressurization and bleed air systems that were analyzed at Boeing's laboratory facilities.

witnesses favored dismissal. Compulsory process for witnesses is available in Cyprus and Greece, including witnesses related to Helios who would not be subject to compulsory process in the United States. Helios has refused to produce voluntarily in the United States its witnesses and evidence; the parties would need to use the Hague Convention to obtain those witnesses' testimony through letters rogatory, and the testimony would not be live. Given the large number of nonparty witnesses who may be involved and Boeing's willingness to make its witnesses available in Greece and Cyprus, the court concluded reasonably that the superiority of live testimony and the inconvenience of taped depositions obtained by letters rogatory favored dismissal.

The district court considered all of the private interest factors proposed by the parties and reasonably determined that the three discussed factors were the only relevant private interest factors. Its balancing of the factors was also reasonable. *See Piper Aircraft*, 454 U.S. at 257. When its analysis is assessed in its entirety, the district court certainly did not abuse its discretion in concluding that the private interest factors favored dismissal. *See id.*

### B.  Public Interest Factors

The record also supports the district court's evaluation of the public interest factors. *Bridgestone*, 420 F.3d at 704. The court did not have sufficient evidence to enable it to assess the congestion of the courts in Greece or Cyprus, but, given that the current median time to trial in the Northern District of Illinois is twenty-four months, the judge reasonably concluded that, at best, this factor

would be neutral. The parties have offered nothing to contradict or impeach this conclusion. As for the respective local interests, the court noted that, although the United States has an interest in regulating domestic companies, its interest is matched by the interests of Greece and Cyprus in regulating the use of allegedly defective products within their borders. Moreover, Greece and Cyprus have an interest in protecting the health and safety of their residents. Helios is a Cyprus-based company, and 111 of the 115 decedents were nationals of Greece or Cyprus. No decedent was a United States citizen; only one might have been a United States resident. Greece and Cyprus have demonstrated interest in the case through their respective criminal investigations into the crash and through Greece's official investigation of the crash. As for pressing jurors into service, the citizens of the Northern District of Illinois have no local connection to Nicos Karakostas, his personal representatives, the Helios personnel or the development and manufacture of the Boeing systems likely involved in the crash. *See id.* at 705.

In short, the court considered all of the public interest factors proposed by the parties and concluded that the relevant factors favored dismissal. Its conclusion was reasonable and, consequently, there is no reason to disturb it. *See Sinochem*, 127 S. Ct. at 1190-91; *Piper Aircraft*, 454 U.S. at 257.

### Conclusion

The district court properly considered all relevant public and private interest factors, and it did not abuse its discretion when, after weighing those factors against

the deference that is due to the plaintiffs' choice of forum, it determined that these factors favored dismissal. *See Piper Aircraft*, 454 U.S. at 257. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

USCA-02-C-0072—7-16-08